Mr. Chief Justice ShaReey
delivered the opinion of the Court.
The appellees filed this bill to rescind a contract for several parcels of land which they had purchased of Benjamin P. Gates. The bill states, that on the 9th of February, 1839, the contract was made by the complainants with Gates for the purchase of the northwest quarter of section twenty-one, and the north-west quarter of section six, in township four, of range two, east; and also an undivided half of the north-west quarter of section seventeen, and the south-east quarter o'f section seven, in the same township and range. Eor the first described parcels they took a deed, which is made an exhibit, and expressess the consideration of 0160, and'contains a covenant of warranty. For the latter parcels, they took a title bond, which is also made an exhibit, and is payable to William and Isaac Mitchell. It expresses the consideration of 04500, being in a penalty of double that sum, conditioned to make title on payment of a certain portion of the purchase-money. This bond was dated on the 5th of October, 1838, and describes the notes taken for the purchase-money. It is stated that this bond, although it bears date prior to the deed, was not delivered until the 9th of February, 1839, and that the consideration of $4500 expressed in it, was in reality the whole consideration for both parcels of land. It is also said, that to suit the purposes of Gates, notes differing from those described in the bond were given. One of the notes for 0850, now held by respondent, Ayres, was given on a former contract for the purchase of the same land by John Quillen an'd William H. Mitchell, which contract had been rescinded by consent, which complainants agreed to pay, as Gates had disposed of it, and could not deliver it on the rescission of the contract. The complainants describe notes outstanding on this contract to the amount of 03861, and aver that they have paid, and destroyed the balance. The notes outstanding, except one of 01000, are held by the respondents as assignees, on several of which partial payments have been made, and on most of them judgments were recovered at May term, 1839, of the Circuit Court, and executions are now in the hands of the sheriff pressing the complainants. The complainants charge that at the time of making said contract, there were judgments against Gates, and that the lands mentioned in the deed had since been sold, and bought by *690 one Foster, and that he falsely and fraudulently represented that he -would be able to make title according to his bond, when he well knew that he could not. They charge that Gates is insolvent, and has removed to Texas, and pray for injunctions and a rescission. Two of the notes filed as exhibits, bear date on the 5th of October, 1838, and one payable on the 25th of December following ; but it is averred in the bill that they were made and delivered on the day of the contract, 9th of February, 1839.
Ayres answered, and denied the rescission of the first contract mentioned in the bill, and calls for full proof. He avers that before taking an assignment of the $850 note, he received assurances from the payees that they would pay it, on the strength of which assurances he supposed also that the $500 note would in like manner be paid, and in fact, that after the assignment of the last note, they promised to pay it; denies the existence of judgments at the time the first contract of sale was made, and avers that the land sold under Foster’s execution, which was for only $160, brought only 015, and that there was collusion between Foster, the purchaser, and complainants. He insists upon his judgment at law, and that he is a bona fide holder of the notes. Ayres sued for the use of N. & H. Weed & Ch. who are also defendants, and by the record of their judgment, it appears that the complainants withdrew their plea and suffered a judgment by default. The answer of Ayres is also adopted as the answer of Weed & Co. ,
Rhodin answered by disclaiming any interest in the note which had been transferred to him, he having returned it to Gates on a failure to get,the amount.
The material parts of the proof will be noticed in the progress of our remarks, both as it may tend to support, and to defeat the complainants’ right to relief.
A complainant who seeks to rescind a contract must show clearly the defect in the title, and that there has been fraud, accident, or mistake, and then the remedy must have been pursued in good time. Moss v. Davidson, 1 Smedes & Marshall, 112; Fletcher v. Wilson, 1 Smedes & Marshall’s Ch. Rep. 376; ib. 134. It is true that if at the time of the decree the vendor is unable to make title, and there is no adequate remedy at law, then a rescission may be *691 decreed. In the case of Hall v. Thompson, 1 Smedes & Marshall, 443, we held, that, to justify a rescission on the ground of fraudulent representations made by the vendor, the representation must be in reference to some material thing, unknown to the purchaser, for want of an opportunity to be informed, or from a confidence which he reposed in the statements of the vendor. In the case of Parham v. Randolph, 4 How. 453, the bill alleged that the purchaser confided entirely in the statements of the vendor, and as they were false and fraudulent, relief was granted. Do the complainants come within these principles ? For several reasons we think they do not. In the first place, for part of the land they took a deed with covenants of warranty. If they purchased the whole at the same time, why, instead of a title-bond, did they not take a deed for the balance ? A fair presumption may, be indulged, that they knew the vendor to be unable to convey. Indeed, they do not aver, that they purchased in ignorance of incumbrances, or a defective title to that part of the land included in the bond. On this subject they are silent. It is true, they charge that Gates represented to them, that he would be able to make a good title, but they do not state, that they confided in these promises. For anything that appears to the contrary, they may have been as well informed of the nature of his title, as he was himself, and equity cannot relieve them against their own folly. So far as this portion of the land was concerned, they were only to receive a title on payment of a part of the purchase-money, and it was incumbent on them to put Gates in default, by offering to perform their part of the contract, before they can ask for a rescission; but no offer, or willingness to perform, is alleged. The removal of Gates to Texas, might furnish them with some apology in this respect, but they do not aver when he went. They may have bad ample opportunity of complying with their contract whilst he remained. His removal may have taken place long after the judgments were rendered against them ; or they may still be able to get a good title. They say, that to the land described in the bond, Gates had no title at the time of making the contract, nor has he now any ; but they do not say who holds the land. It was incumbent on them to have shown the nature of incumbrances or outstanding titles, so that the Court may judge of *692 their validity. 7 Howard, 170. The proof on this subject leaves' the nature of the outstanding title equally uncertain. The only testimony to this point is that of Foster, who was asked, u Who held title in February, 1839, to the undivided half of the northwest quarter of section seventeen, and the southeast quarter of section seven, township four, range two, east ? ” He answered, “ I held title to both quarters, and do at this time ; ” but he does not say what kind of title he held, or how, or from whom he acquired it. It may have been mere matter of opinion with hiVn ; or he may have been under contract to make title to Gates. It was quite an easy matter for him to have disclosed his title, and the failure to interrogate further, looks as though the complainants did not wish- a full disclosure.
There is an allegation in the bill that the land conveyed by the deed was subject to judgments to a large amount. The amount of the judgment liens is not stated. The only judgment proven to have then existed, was one in favor of Foster. The complainants were particular in asking him as to the date of the judgment, but made no inquiry as to the amount. By the testimony of another witness, it appears that Foster’s judgment was for $154, and, under an execution on it, the sheriff sold the land described in the deed, as well as the land mentioned- in the title bond. If Gates had no title to the land contained in the bond, as the bill charges, this sale is unaccountable. Foster became the purchaser at this sale, and afterwards sold the mill tract, mentioned in the bond, to Owens, and delivered him possession. But it is still more unaccountable that Foster, the execution creditor of Gates, should have had his execution levied on land which he testifies that he owned in February, 1839, and that he should have become the purchaser at sheriff’s sale of his own property. He states that he sold to Owens in virtue of the title he held previous to the sale, and also under the title acquired from the sheriff. His statement in this respect must show that the truth of his assertion, that he owned the land in February, 1839, may well be doubted. A scrutinous examination of the complainant’s proof, is well calculated to raise a belief that something has been concealed. It is not characterized by that fairness, which is necessary for one who is seeking relief in a Court *693 of Equity. It does not make a full disclosure. The complainants, after asserting, that the property they purchased of Gates was subject to judgment liens to a large amount, are unable to furnish evidence of more than one judgment, and that one is only for $154. For this small amount, the whole property, for which they had agreed to give $4500, was sold, and bought by the plaintiff in execution, who swears that he was the owner of part of it before. And Ayres avers in his answer, and probably truly, that the whole property was sold for $15. If this averment was untrue, the complainants could have easily disproved it, and although not strictly bound to do so, yet it is strange they did not.
But further, the complainants aver, that the contract for both parcels of land was an entire one, and entered into on the 9th of February, 1839 ; the deed bears that date, but the title bond is dated on the 5th of October, 1838, and they have furnished no other proof on this subject! Apparently, then, they purchased by two different contracts.
There is also an allegation in the bill, that one of the Mitchells and John Quillen had entered into, a contract with Gates for this same land, on the 28th of September, 1839, on which occasion the note for $850 was given. This contract, it is said, was rescinded by mutual consent. Ayres denies this; and Quillen was examined as a witness on behalf of respondents; He states, that, in conjunction with William Mitchell, he made the purchase, and that in the early part of 1839, he sold'out his interest to one of the Mitchells, taking from him a bond of indemnity ; but he says nothing of a rescission of the contract. This allegation is then disproved, and, as the contract with Quillen and Mitchell was made before Foster recovered his judgment, it was not a lien on the property purchased of Gates by Quillen and Mitchell.
Ayres alleges that he was induced to purchase the $850 note, in consequence of assurances that it would be paid. Such assurances given before assignment, amount to a waiver of all equities, and there are circumstances which tend very strongly to prove the truth of this averment. After assignment, the complainants paid him part, and promised to pay the balance. It is usually necessary for a party who desires to rescind a contract, to make his application *694 as soon as he discovers the ground of rescission. By subsequent acts, he may waive his right to have the contract set aside. Pintard v. Martin, 1 Smedes & Marshall’s Ch. Rep. 126. Besides making payments after the notes were transferred, the complainants suffered judgments to go against them, and made no attempt at relief until pressed by executions.
On the whole case, the complainants have certainly not shown themselves to be entitled to a rescission of the contract. To entitle a party to this remedy, he must make out a clear and undoubted case. Hall v. Thompson, above cited. This case, to say the least of it, is very doubtful. There is not that clear showing as to the nature of the contract, the deception practised on complainants, and of the existence and nature of the outstanding title, that would enable us to say that there was either fraud, accident, or mistake, or even an inability in Gates to convey. The complainants seem to rely on the judgment in favor of Foster, as a mere pretext for rescinding the contract. They were largely indebted for the land, and if they had desired to act in good faith, they might have easily extinguished the lien, even if it were such. But, instead of doing so, they suffered the whole property to sell for a mere trifle, and then ask a rescission, loqg after they must have discovered the defect in the title, if there was any.
From these views, it results, that the decree of the Vice Chancellor was erroneous, and it is therefore reversed, and the bill dismissed, as to all the respondents, except as to Gates, as to whom the injunction may be retained for further proceedings, if necessary. -
Clayton, J.', having been counsel, gave no opinion in the cause.